UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KRISTINA FOUKAS, YANA KOVALEVA, and
OXANA SOBOLEVA,

                                    Plaintiffs,

                                                                       **REPORT & RECOMMENDATION**
              -against-                                  20-CV-05516-NCM-SJB

IOANNIS FOUKAS,

                                    Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       Plaintiffs Kristina Foukas, Yana Kovaleva, and Oxana Soboleva ("Plaintiffs") filed a motion for attachment pursuant to New York Civil Practice Law and Rules ("CPLR") § 6201. They seek an order attaching Defendant Ioannis Foukas's ("Defendant") proceeds of the sales of his rental properties, pending the Court's final judgment. For the reasons stated below, the Court recommends granting Plaintiffs' motion, in part, as detailed herein.

FACTUAL AND PROCEDURAL BACKGROUND

       Plaintiffs began this case on November 12, 2020, against Defendant Foukas, alleging violations of the Trafficking Victims Protection Act ("TVPA") and New York Labor Law ("NYLL"), and asserting state law tort claims for negligent and intentional infliction of emotional distress, assault, and battery. (Compl. dated Nov. 12, 2020, Dkt. No. 1 ¶¶ 1, 218–47). Plaintiffs filed the operative complaint on July 21, 2022, asserting the same causes of action. (Am. Compl. dated July 21, 2022 ("Am. Compl."), Dkt. No. 58 ¶¶ 179–207)). On May 22, 2023, Plaintiffs first filed their motion for attachment, (Pls.' Mot. for Attachment dated May 22, 2023 ("Pls.' May Mot. for Attachment"), Dkt.

No. 72), requesting attachment of (1) the proceeds of the sale of three properties partially owned by Defendant through LLCs (which are held in escrow with Dechert LLP), (2) the proceeds of the sale of Defendant's two properties located at 1651 West 2nd Street, Brooklyn, NY (the "1651 Property") and at 180 Brighton 10th Street, Brooklyn, NY (the "180 Property"), and (3) the property located at 31 Brighton 3rd Walk, Brooklyn, NY (the "31 Property").  (*See* Pls.' Mem. of Law in Supp. of Pls.' May Mot. for Attachment ("Pls.' May Mem. of Law"), Dkt. No. 72-1 at 1).  At that time, Plaintiffs alleged—and Defendant has not disputed—that the 1651 Property and the 180 Property had been sold by Defendant at below market value in an attempt to conceal assets and avoid a monetary judgment.  (*Id.* at 1–2).

On October 4, 2023, Plaintiffs filed a renewed motion for attachment, (Pls.' Mot. for Attachment dated Oct. 4, 2023 ("Pls.' Oct. Mot. for Attachment"), Dkt. No. 83).  In light of the filing of the renewed motion, the Court denied the May Motion as moot.  (Order dated Jan. 4, 2024).  Defendant filed an opposition to Plaintiffs' motion on November 13, 2023.  (Def. Opp'n to Mot. for Attachment dated Nov. 13, 2023 ("Def.'s Opp'n"), Dkt. No. 84).  On June 12, 2024, Plaintiffs informed the Court that Defendant sold the final property, the 31 Property, on May 13, 2024.  (Pls.' Letter dated June 12, 2024 ("Pls.' Letter"), Dkt. No. 99).[1]

---

[1] The May Motion was filed as Defendant's first retained attorney was in the process of withdrawing.  (*See* Oleg A. Mestechkin's Mot. to Withdraw dated May 2, 2023, Dkt. No. 68; Pls.' May Mot. for Attachment (filed May 22, 2023)).  The Court set a hearing on the motion to withdraw for May 23, 2023, and ordered Defendant to attend.  The day before the motion hearing, Plaintiffs filed their May Motion.  (Pls.' May Mot. for Attachment).  Defendant did not appear at the hearing.  (Min. Entry & Order dated May 23, 2023).  The Court ordered a supplemental affidavit from Defendant's counsel, gave Defendant an opportunity to respond, and scheduled another hearing for June 14, 2023.  (*Id.*).  The Court further ordered that the deadline for Defendant to respond to the May

DISCUSSION

"Federal Rule of Civil Procedure 64 permits federal litigants to seek an order of attachment in the manner provided by the law of the state in which the district court sits." *IME Watchdog, Inc. v. Gelardi*, No. 22-CV-1032, 2024 WL 866136, at *3 (E.D.N.Y. Feb. 29, 2024) (quoting *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009)).  A party seeking an order of attachment must establish four things: (1) a claim for a money judgment, (2) probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under 12 N.Y. CPLR § 6201, and (4) the amount demanded exceeds any offset for

---

Motion be held in abeyance pending the motion to withdraw.  (*Id.*).  Following the June 14 hearing, the Court granted the motion to withdraw, gave Defendant until August 14, 2023 to obtain new counsel, and set a status conference for August 24, 2023.  (Min. Entry & Order dated June 15, 2024).  Defendant failed to appear at the August 24 status conference, and the Court set a final status conference for September 20, 2023.  (Order to Show Cause dated Aug. 25, 2023).  At the September 20 status conference, Defendant appeared, and the Court set the deadline for him to file his opposition to the motion for attachment as October 20, 2023.  (Min. Entry & Order dated. Sept. 21, 2023).  He requested an extension until October 30, 2023, which the Court granted.  (Order dated Sept. 28, 2023).  Plaintiffs then filed their renewed October motion based on new evidence, and the Court *sua sponte* extended the time for Defendant to respond until November 13, 2023.  (Order dated Oct. 6, 2023).  He filed his opposition that day.  (Def. Opp'n).

The October motion for attachment ("October Motion") was referred to the undersigned on January 4, 2024.  (Order Referring Mot. dated Jan. 4, 2024).  After the parties filed their portions of the joint pre-trial order, the Court held a status conference on April 29, 2024.  (Min. Entry & Order dated Apr. 29, 2024).  Defendant retained new counsel for the purposes of trial.  (*See id.*).  Counsel subsequently filed a motion to withdraw (Thomas Michael Finnegan's Mot. to Withdraw dated June 7, 2024 ("Finnegan Mot. to Withdraw"), Dkt. No. 97), and the Court set a motion hearing for June 18, 2024.  (Order dated June 10, 2024).  The Court granted the motion, (Min. Entry & Order dated June 18, 2024), and directed Plaintiffs to file additional authority regarding attachment of assets, which they filed on June 21, 2024.  (Pls.' Suppl. Letter dated June 21, 2024, Dkt. No. 100).  The Court directed Defendant to respond to the letter by July 1, 2024.  (Order dated June 24, 2024).  No response was filed, and the Court has denied a request for yet another extension, which was an obvious attempt at delay.

3

counterclaims. *Hawkins v. Zoegall*, No. 23-CV-4040, 2023 WL 4106645, at *2 (E.D.N.Y. June 20, 2023).[2]

Plaintiffs satisfy the first and fourth elements. Their claims are for TVPA violations, state law minimum wage and overtime violations under the NYLL, and state law tort claims for negligent and intentional infliction of emotional distress, assault, and battery, (Am. Compl. ¶¶ 179–207), and they seek compensatory and punitive damages, and attorney's fees and costs. (*Id.* Prayer for Relief). Accordingly, Plaintiffs have a cause of action for a money judgment. *See, e.g.*, *Hawkins*, 2023 WL 4106645, at *3 (finding first requirement satisfied where plaintiffs sought damages and attorney's fees); *IME Watchdog, Inc.*, 2024 WL 866136, at *3 (finding first requirement satisfied where underlying suit sought legal and equitable relief, and contempt motion sought compensatory damages); *Owens v. Taliban*, No. 22-CV-1949, 2022 WL 1090618, at *3 (S.D.N.Y. Apr. 11, 2022) (finding first requirement satisfied where plaintiffs brought claims under the Anti-Terrorism Act, the Alien Tort Statute, and New York state tort law). And as to the fourth element, Defendant has not brought any counterclaims against Plaintiffs, so there is no potential offset. *See IME Watchdog, Inc.*, 2024 WL 866136, at *3 ("Defendants have not asserted any counterclaims against Plaintiff, and as such, it is undisputed that the amount demanded from Defendants exceeds all counterclaims asserted against Plaintiff."). As explained below, because the Court finds

---

[2] Defendant argues in opposition that that the motion is premature. This argument fails because there is no set timeframe where it is appropriate to seek attachment; indeed, Federal Rule of Civil Procedure 64 provides: "*At the commencement of and throughout an action*, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." (emphasis added).

4

that Plaintiffs have established the other two elements, the Court recommends the motion for attachment be granted in part.

A.        <u>Second Requirement: Likelihood of Success on the Merits</u>

"Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." *Yong Xiong He v. China New Star Rest., Inc.*, No. 19-CV-5907, 2020 WL 6202423, at *10 (E.D.N.Y. Oct. 22, 2020) (quoting *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)). In evaluating the proof on this element, "the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010) (quotations omitted).

18 U.S.C. § 1595(a)[3] enables "victims of [a violation of the TVPA] to bring civil suits against their traffickers." *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616, at *7 (S.D.N.Y. Sept. 9, 2021). For the reasons stated below, the Court finds that Plaintiffs are more likely than not to succeed on these TVPA claims.[4]

To establish a forced labor claim under 18 U.S.C. § 1589, a plaintiff must show that the defendant "knowingly provide[d] or obtain[ed]" plaintiffs' labor or services by

---

[3] "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C.A. § 1595(a).

[4] In light of the overwhelming, unrebutted evidence in support of the forced labor claim, the Court need not and does not reach the likelihood of success on Plaintiffs' trafficking claims under 18 U.S.C. § 1590.

means of: (1) "force, threats of force, physical restraint, or threats of physical restraint to that person or another person"; (2) "serious harm or threats of serious harm to that person or another person"; (3) "abuse or threatened abuse of law or legal process"; or (4) "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(1)–(4). "[T]he fundamental purpose of § 1589 is to reach cases of servitude achieved through nonviolent coercion—namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 704 (S.D.N.Y. 2022) (alteration in original).

"The TVPA defines 'serious harm' as 'any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.'" *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 437 (E.D.N.Y. 2017) (quoting 18 U.S.C. § 1589(c)(2)). The relevant question is "whether [a] defendant['s] conduct constituted a threat of harm serious enough to 'compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.'" *Paguirigan v. Prompt Nursing Emp. Agency LLC* ("*Paguirigan II*"), No. 17-CV-1302, 2019 WL 4647648, at *16 (E.D.N.Y. Sept. 24, 2019) (quoting 18 U.S.C. § 1589(a)(2)). In making this determination, the factfinder "is permitted to consider the 'particular vulnerabilities of a person in the victim's position,' but is required to find that 'her acquiescence be objectively reasonable under the

6

circumstances.'" *Id.* (quoting *United States v. Rivera*, 799 F.3d 180, 186–87 (2d Cir. 2015)).

"[T]hreatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1). "Threats to expose a plaintiff to deportation or to cancel their immigration sponsorship amount to 'abuse of legal process' in the context of Section 1589(a)(3)." *Baldia*, 633 F. Supp. 3d at 708 (citing *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 93 (2d Cir. 2019)).

Plaintiffs have put forth sufficient evidence to establish that Defendant obtained Plaintiffs' labor and services through threats of serious harm and threats of abuse of law or legal process. Plaintiffs allege that Defendant coerced them into working as exotic dancers at nightclubs, that he controlled their schedules, and that they had to provide a large portion of their earnings to him. (Pls.' May Mem. of Law at 11; Am. Compl. ¶¶ 50–51, 91–92, 107, 123, 128–29, 159, 166, 169). They support these claims with deposition testimony: Plaintiff Sobolova testified that "Mr. Foukas forced me to work in the club," (Oxana Soboleva Dep. dated Feb. 3, 2022 ("Sobolova Dep."), attached as Ex. 11 to May Mot. for Attachment, Dkt. No. 72-13 at 36:1–16), and Plaintiff Kovaleva testified that "John Foukas forced me to work in the club so that I could invest [in property]. So there wasn't an opt out of a difficult working condition. On the contrary, he forced me to work even more." (Yana Kovaleva Dep. dated Feb. 3, 2022 ("Kovaleva Dep."), attached as Ex. 6 to May Mot. for Attachment, Dkt. No. 72-8 at 40:2–11). Defendant also had Plaintiffs perform maintenance on his properties, including shoveling snow and cleaning. (Jan.

7

2017 Text Messages, attached as Ex. 17 to May Mot. for Attachment, Dkt. No. 72-19 at JD-PLTF-0002652; Kristina Foukas Dep. dated Feb. 1, 2022 ("K. Foukas Dep."), attached as Ex. 7 to May Mot. for Attachment, Dkt. No. 72-9 at 67:1–68:24). Plaintiff Foukas testified that Defendant asked her to help him work on "his personal houses, to re-park his car, to be his personal assistant, to translate from [an]other language." (K. Foukas Dep. at 67:1–17). Plaintiffs also testified that Defendant directed them to cook and clean for him without pay. (*Id.* at 68:11–13 (Kristina Foukas testifying that she "clean[ed] the house, cooked, [and] cleared the snow"); Kovaleva Dep. at 68:21–69:19, 81:22–82:16). Plaintiffs also performed massages for Defendant, sometimes daily. (Kovaleva Dep. at 82:17–24; Feb. 2017 Text Messages, attached as Ex. 16 to May Mot. for Attachment, Dkt. No. 72-18 at JD-PLTF-0003068 ("I will go to my room and tell them after they have to give me massage when you and your mom leaves[.]"); May 2017 Text Messages, attached as Ex. 18 to May Mot. for Attachment, Dkt. No. 72-20 at JD-PLTF-0004018 ("Thank you little bit massage after from Margarita and Oxanna please")).

  This labor was obtained through "serious harm or threats of serious harm" under § 1589(a)(2): namely, the threat of financial ruin and distress if Plaintiffs failed to comply with Defendant's demands.

  Plaintiffs were all born and raised in Russia and moved to New York between 2008 and 2010, when they were between 20 and 23 years old. (Decl. of Kristina Foukas ("K. Foukas Decl."), attached as Ex. 2 to May Mot. for Attachment, Dkt. No. 72-4 ¶¶ 2–3; Decl. of Oxana Soboleva ("Soboleva Decl."), attached as Ex. 3 to May Mot. for Attachment, Dkt. No. 72-5 ¶¶ 2–3; Decl. of Yana Kovaleva ("Kovaleva Decl."), attached as Ex. 4 to May Mot. for Attachment, Dkt. No. 72-6 ¶¶ 2–3). When Plaintiffs came to

8

the United States, they met Defendant and all moved into his home. (K. Foukas Decl. ¶ 3; Soboleva Decl. ¶ 3; Kovaleva Decl. ¶ 3). Defendant told Plaintiffs that if they gave him their money—tens of thousands of dollars from Plaintiffs Foukas and Kovaleva and $200,000 from Plaintiff Soboleva—he would invest it and help them obtain financial freedom. (K. Foukas Decl. ¶ 5; Soboleva Decl. ¶ 7; Kovaleva Decl. ¶ 7). If Plaintiffs left, they would not get their money back from him. (*See* Kovaleva Dep. at 54:18–55:1; *see* Soboleva Decl. ¶ 7).

As such, Plaintiffs, who were young immigrants, gave Defendant large sums of money and portions of their wages. The threat of losing large sums of money as a young immigrant constitutes a threat of serious financial harm that could "compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2); *see, e.g.*, *Javier v. Beck*, No. 13-CV-2926, 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (finding threats to enforce a $15,000 judgment if plaintiff left employment sufficient to constitute serious harm); *Paguirigan II*, 2019 WL 4647648, at *18 (finding a contract that would require plaintiff to pay $25,000 if plaintiff left employment constituted a threat of serious harm).

Plaintiffs have similarly shown they are likely to succeed on the merits of their TVPA claim based on a threatened abuse of legal process under § 1589(a)(3). Defendant threatened Plaintiffs that if they left, he would call immigration authorities on Plaintiffs Soboleva and Kovaleva and report all three of them to the IRS. (*See* Kovaleva Dep. at 54:18–55:1). He told Kovaleva that if she left, "immigration services would find [her.]" (*Id.* at 54:23). Defendant texted that he would "prepare a nice letter for immigration for you and Oxanna [Soboleva] because you don't pick up the phone because you treat me

9

like a piece of shit," and said he would "file a police report [for a] missing illegal alien for 24 hours." (Aug. 2017 Text Messages, attached as Ex. 12 to May Mot. for Attachment, Dkt. No. 72-14, at JD-PLTF-0006037). Defendant also texted, "[n]ot to[o] much time for you in America sweetheart you are playing to[o] much illegal games." (*Id.*). He threatened to report Plaintiffs to the IRS for "play[ing] games with [their] income taxes," and again to immigration authorities if Plaintiffs did not respond to his text messages: "I will send out . . . [c]ertified letter for the immigration for [Soboleva] and [Kovaleva]." (Oct. 2017 Text Messages, attached as Ex. 13 to May Mot. for Attachment, Dkt. No. 72-15 at JD-PLTF-0016496). These threats to report Plaintiffs Soboleva and Kovaleva to immigration authorities constitute a threatened abuse of law or legal process. *Magtoles*, 2021 WL 6197063, at *8 ("Defendants' alleged threats of reporting, deportation, and litigation also support a claim based on an abuse of legal process under Section 1589(a)(3)."); *e.g.*, *Adia*, 933 F.3d at 93 ("When Younas said that the defendants would withdraw their sponsorship of Adia's visa if he stopped working for them or gave them any trouble, the statement, viewed in light of the surrounding circumstances, plausibly supports an inference that Adia was entitled to regard it as a threat to expose him to deportation.") (collecting cases).

      Defendant argues that Plaintiffs cannot succeed on their claims because Plaintiffs were kind to him, took care of him when he was sick, were co-owners of a business with him, and because Plaintiffs "invented these crimes." (Def.'s Opp'n at 1–2). He also claims that "Plaintiffs admit in the text and the discovery that they used to dance before

they knew [him]." (*Id.* at 2).⁵  As discussed, *supra* at pp. 7–10, Plaintiffs, through deposition testimony, affidavits, and documents produced in discovery, have shown that Defendant obtained their labor through threats of serious harm and threatened abuse of the legal process.  Allegations that Plaintiffs may have been kind to Defendant, that they were co-owners of an LLC, and that they may have danced prior to knowing Defendant, do not negate or demonstrate that the elements of a force labor claim have not been established.  *Vidal v. Advanced Care Staffing, LLC*, No. 22-CV-5535, 2023 WL 2783251, at *13 (E.D.N.Y. Apr. 4, 2023) ("[T]he relevant question under § 1589(a)(2) is whether defendants' conduct constituted a threat of harm serious enough to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." (quotations omitted)).

  Because Plaintiffs have shown that Defendant knowingly obtained their labor through the threat of serious financial harm and the threatened abuse of legal process, Plaintiffs have shown that they are likely to succeed on the merits of their TVPA claims. *See id.* at *15 (finding plaintiff likely to succeed on the merits of his TVPA claims where plaintiff's employment contract provided that if he stopped working, he would be liable for various forms of monetary recovery paid to defendants).

---

⁵ He also attached numerous letters speaking to his character.  (Def.'s Character Letters, Dkt. No. 85).  These do not speak to the elements of the claim and are not relevant.

B.  Third Element: Enumerated Statutory Grounds

Plaintiffs argue attachment is warranted because Defendant intends to frustrate the enforcement of a potential judgment through "fraudulent dissipation and concealment of assets." (Pls.' May Mem. of Law at 17).[6]  The Court agrees.

An order of attachment may be granted through proof of intentional fraud, *i.e.*, that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. CPLR § 6201(3). "Because 'fraudulent intent is rarely susceptible to direct proof,' district courts in the Second Circuit have examined whether allegedly suspicious transactions exhibit 'badges of fraud' that give rise to a sufficient inference of intent." *DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 320 (quoting *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983)).  The Court may consider the following non-exhaustive list of "badges of fraud" in determining fraudulent intent:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

---

[6] Plaintiff also argues that attachment is warranted under CPLR § 6201(1) because Defendant no longer resides or is domiciled in New York. (*See generally* Pls.' Oct. Mem. of Law). They argue that because Defendant has admitted on the record before this Court that he no longer lives in New York, he should be found to be a nondomiciliary of New York. (*Id.* at 6–7).  Because the Court finds sufficient statutory grounds for attachment under CPLR § 6201(3), it need not address other bases for the same relief.

12

*Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565, 2016 WL 7217641, at *7 (E.D.N.Y. Dec. 13, 2016). The Court infers Defendant's fraudulent intent from the fifth "badge of fraud," *i.e.*, "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors and the general chronology of the events and transactions under inquiry." *IME Watchdog, Inc.*, 2024 WL 866136, at *4 (quoting *Coley*, 2016 WL 7217641, at *7).

Since the beginning of 2023, three years after this litigation began, Defendant has sold three of his properties. (1651 West 2nd Street Deed ("1651 Deed"), attached as Ex. 26 to May Mot. for Attachment, Dkt. No. 72-28 (sold on Feb. 9, 2023); 180 Brighton 10th Street Deed ("180 Deed"), attached as Ex. 27 to May Mot. for Attachment, Dkt. No. 72-29 (sold on Mar. 14, 2023); 31 Brighton 3rd Walk Deed ("31 Deed"), attached as Ex. A to Pls.' Letter, Dkt. No. 99-1 (sold on May 13, 2024)). This suggests he intends to and has disposed of assets that Plaintiffs might be able to seize in order to satisfy their money judgment. *IME Watchdog, Inc.*, 2024 WL 866136, at *4 (finding fraudulent intent where defendant sold numerous properties after the commencement of the litigation). Indeed, Defendant has testified that his properties were his only assets; he testified that he has no money or home. (Ioannis Foukas Dep. dated Feb. 14, 2022, attached as Ex. 5 to Pls.' May Mot. for Attachment, Dkt. No. 72-7 at 12:20–22 ("I have no money and I have no home."); *id.* at 37:4–18).

The events related to the 31 Brighton Property illustrate the fraudulent intent of these transactions. On May 28, 2024, Plaintiffs' counsel discovered that Defendant had sold the 31 Brighton Property on May 13, 2024. (Pls.' Letter at 1). Defendant sold the property for "far less than its fair value" and sold it to an entity called "31 Brighton 3rd

13

Walk LLC." (*Id.*). Plaintiff's counsel has been unable to identify the members of this LLC or determine whether Defendant is a member of the LLC. (*Id.*). (Defendant's most recent counsel—before he was relieved—indicated that he was unaware of the sale but confirmed that a sale had taken place (*Id.* at 1–2)).

  Defendant's prior counsel agreed to represent Defendant provided that he complied with "certain conditions that [he] believed were necessary in order to conduct negotiations with the Plaintiffs in good faith and to respect the Court's refraining from ruling on the attachment motion." (*Id.* ¶ 6). Counsel also provided an engagement letter that required Defendant to always be truthful with counsel. (*Id.*). During settlement negotiations, counsel "became aware of actions by the Defendant that [he] believed constituted a violation of the[se] conditions." (*Id.* ¶ 8). Following this revelation, counsel moved to withdraw. (Finnegan Mot. to Withdraw). It appears that Defendant was trying to keep the sale of the 31 Brighton Property secret, including from his lawyer. Defendant was plainly attempting to dispose of all of his assets before a judgment could be entered against him and thereby deprive Plaintiffs of any financial recovery. As noted earlier, the two other properties besides 31 Brighton—the 1651 Property and the 180 Property—were sold after the litigation began. This constellation of events is sufficient to infer that Defendant's intent is fraudulent, and Plaintiffs, therefore, have established the third element required for attachment. *See e.g.*, *Prabir v. Bukhara Indian Cuisine, Inc.*, No. 17-CV-3704, 2018 WL 2709231, at *3–*4 (S.D.N.Y. May 17, 2018) (finding fraudulent intent where defendants put their restaurant up for sale one month after the commencement of the lawsuit and where defendant tried to keep the sale a secret), *report and recommendation adopted*, 2018 WL 2694435, at *1 (June 5, 2018).

14

\*              \*              \*

The Court agrees with Plaintiffs that they have satisfied the elements necessary for an order of attachment under CPLR § 6201(3). Because the proceeds from the sales of the three properties have not been identified, the Court directs Defendant to provide Plaintiffs with all documents in his possession related to the disposition of the 1651 Property, the 180 Property, and the 31 Property, including bank statements, sales contracts, emails, letters, and tax documents. And Plaintiffs may conduct any third-party discovery necessary to identify the location of these proceeds, so they may be attached.

Dechert currently holds $180,794.56 in escrow. (Pls.' Oct. Mem. of Law at 1 n.2). These are proceeds not from the sales of the three properties but proceeds from sales of Defendant's interest in properties owned by various LLCs. Specifically, they are proceeds from Defendant's interest from the sale of 188 Brighton 10th Street, 196 Brighton 10th Street, and 200 Brighton 10th Street. (Pls.' May Mem. of Law at 2 n.1). Plaintiffs are entitled to attach these identifiable proceeds, having established all the predicate elements under New York law. *See CF 135 Flat LLC v. Triadou SPV S.A.*, No. 15-CV-5345, 2016 WL 11796432, at \*3 (S.D.N.Y. July 18, 2016) (Nathan, J.) (attaching "any funds held in escrow").

A plaintiff seeking an order of attachment is required "to provide an 'undertaking' as security for (1) costs and damages incurred by the defendant in the event that the court subsequently determines that the plaintiff was not entitled to an attachment or if defendant ultimately recovers judgment; and (2) certain fees incurred by the sheriff." *Herzi v. Ateliers De La Haute-Garonne*, No. 15-CV-7702, 2015 WL 8479676, at \*3 (S.D.N.Y. Oct. 13, 2015). The undertaking cannot be less than $500, but otherwise is

15

within the discretion of the Court. *Id.*; *see* N.Y. CPLR § 6212(b). "Courts frequently set the undertaking as a fraction of a percent of the value of the attachment." *IME Watchdog*, 2024 WL 866136, at *6 (collecting cases). At this time, the Court is only granting attachment as to Defendant's portion of the proceeds held in escrow, $180,794.56. The Court finds an undertaking of $1,000, which is approximately 0.55% of Defendant Foukas's share of the LLC proceeds in escrow, is appropriate. *See, e.g.*, *id.* (finding an undertaking of $920 appropriate when the value of attachment was $184,000 (0.50%)); *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, No. 13-CV-6338, 2017 WL 1862211, at *4 (E.D.N.Y. May 8, 2017) ("This amount constitutes one-half of a percentage of the attachment sought, which is consistent with amounts other courts have set in similar circumstances.").

## CONCLUSION

The Court recommends that the motion for attachment be granted in part and denied in part. Pursuant to N.Y. CPLR § 6201(3), the Court recommends an order of attachment of Defendant's share of the proceeds from the LLC sales, which are held in escrow with Dechert LLP. The Court recommends directing Dechert to continue holding the attached funds in escrow pending further order of this Court. The Court further recommends denying, for the time being, attachment with respect to any additional proceeds of the 1651 Property, the 180 Property, and the 31 Property, but directs Defendant to produce the documents directed in this order. Plaintiffs may seek expansion of the present attachment order upon identification of the location of additional proceeds without needing to re-establish the legal bases to do so. The Court also recommends that Plaintiffs be directed to post an undertaking of $1,000 with the Clerk of Court within 14 days of the adoption of this Report and Recommendation.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/Sanket J. Bulsara   July 26, 2024*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York